715 F.2d 435
 83-2 USTC P 9575
 Norman R. and Judith A. DAVIES; John J. and Doris A.
McDonald; Harold and Marilyn Chausmer; Ralph
Stanton; and Leo and Rosemary
Trefiletti, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 82-7140.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 15, 1982.
Decided Sept. 6, 1983.
 
 Robert A. Jones, Las Vegas, Nev., for petitioners-appellants.
 Jonathan S. Cohen, Washington, D.C., for respondent-appellee.
 Appeal from the United States Tax Court.
 Before DUNIWAY, SKOPIL, and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 These five appeals are taken from five separate decisions of the tax court finding income tax deficiencies of five Las Vegas casino employees and their wives. Because notices of appeal from the tax court decisions were not filed within 90 days of entry of the decisions as required by 26 U.S.C. § 7483 (1976), we dismiss the appeals for lack of jurisdiction.
 
 
 2
 * The taxpayers in these appeals are four married couples who filed joint returns and Ralph Stanton. The husbands and Stanton were employed for the tax years at issue at the Dunes Hotel & Country Club in Las Vegas, where they received tips or "tokes" in the form of coins or casino chips.
 
 
 3
 In 1977 and 1978, the Commissioner determined that the taxpayers had underreported tip income in 1969, 1970, and 1971 and issued notices of deficiency against them. Each of the five taxpayers then filed separate petitions in the tax court for a redetermination of the deficiencies, and each taxpaying unit was assigned a separate docket number.
 
 
 4
 After the Commissioner had filed five separate answers, in February of 1979, he moved to consolidate the five cases along with another case, involving Howard F. and Mildred E. Keogh (Keoghs), "for purposes of trial, briefing and opinion," since all of the six cases arose from the same pattern of tip distribution among employees at the Dunes Hotel. Counsel for the taxpayers and the Keoghs joined in the motion in March, and consolidation was ordered. At no point, however, were the taxpayers and the Keoghs joined in one action. Indeed, despite the consolidation of the matters for briefing, trial, and opinion, the taxpayers and the Keoghs retained six separate docket numbers.
 
 
 5
 As consolidated, the matters were tried and briefed together. There is a single trial record, containing a joint stipulation of facts, exhibits relating to each taxpayer, and exhibits and a trial transcript relating to all taxpayers. On August 17, 1981, the tax court filed a single "Memorandum, Findings of Fact, and Opinion," captioned in, and stating the court's conclusions in all six matters. See Davies v. Commissioner, 42 T.C.M. (CCH) 768 (1981). However, the memorandum opinion filed by the tax court explicitly stated that separate "[d]ecisions will be entered ...," and on November 5, 1981, six separate "Decision[s]" were in fact filed and entered. Each was captioned in a different one of the original cases, and each stated the amounts of the annual deficiencies for the particular taxpayer.
 
 
 6
 On November 13, 1981, the Keoghs filed a notice of appeal from their tax court decision. Nearly four months later, on March 2, 1982, the five taxpayers filed a joint notice of appeal "from the decision [sic] of [the tax] court entered" on November 5, 1981. Although the court of appeals never consolidated the five appeals on its motion or upon motion by one or more of the taxpayers, the clerk of the court gave the five appellants one docket number (No. 82-1740) and required them to pay only one fee. On April 13, 1982, the court of appeals granted the motion of the five taxpayers to consolidate their appeals in No. 82-1740 with that of the Keoghs in No. 81-7780. See Fed.R.App.P. 3(b).
 
 II
 
 7
 Our jurisdiction to review decisions of the tax court is conferred by 26 U.S.C. § 7482 (1976). Review under that section is in turn limited to cases which are timely appealed under the terms of 26 U.S.C. § 7483 (1976), which provides:
 
 
 8
 Review of a decision of the Tax Court shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days after the decision of the Tax Court is entered. If a timely notice of appeal is filed by one party, any other party may take an appeal by filing a notice of appeal within 120 days after the decision of the Tax Court is entered.
 
 
 9
 In each of the five cases before us, the taxpayer did not file a notice of appeal within 90 days of the decision of the tax court as specified in section 7483. Unlike the Keoghs, appellants in No. 81-7780, see Keogh v. Commissioner, 713 F.2d 496 (9th Cir.1983), the appellants in No. 82-1740 did not file their self-styled "consolidated" notice of appeal until 117 days after entry of the decisions against them. The Commissioner argues that we lack jurisdiction over those late appeals. We agree.
 
 
 10
 The appellants point to the fact that the cases were consolidated by the Tax Court, that they were tried in one proceeding, and that, but for the mechanics of computing the deficiencies, they were decided by the court as one case. They argue that, because all six taxpayers were part of one tax court proceeding and because the Keoghs did file a notice of appeal within 90 days of the tax court decisions, the remaining five taxpayers were entitled to an extended 120-day period in which to file their notices of appeal as provided by the second sentence of section 7483. By contrast, the Commissioner points to the explicit language of section 7483, which refers to review of the "decision" of the tax court; to the fact that the consolidation was only for stated purposes, not including "decision"; to the fact that the tax court's Memorandum states that "Decisions will be entered"; and to the fact that a separate decision was in fact entered in each of the six cases. He concludes that, because the other five taxpayers were not parties to the Keogh case, they cannot avail themselves of the extended filing period provided by the second sentence of section 7483. We conclude that the Commissioner is right and that we have no jurisdiction over the appeals in these five cases.
 
 
 11
 When Congress conferred jurisdiction upon the court of appeals to hear appeals from decisions of the tax court, it chose to give an extra 30 days for filing of a notice of an appeal from a decision only to another party to that decision. See 26 U.S.C. § 7483. We do not dispute that Congress, for whatever reasons, could more broadly have provided an extended filing period to any other party to the same "proceeding." Since Congress did not do so, however, our inquiry is solely whether the late filer was a party to the same decision as the timely filer. Congress has defined our jurisdiction over a party filing an appeal beyond the 90 days by reference to his joinder in the same tax court decision --not to his participation in the same proceeding or to his inclusion in the same opinion --as a timely filer. Indeed, in tax court proceedings, the "decision" is a document entirely separate from the "opinion" or "findings of fact" upon which the "decision" is based. Compare 26 U.S.C. § 7459(b) (1976) ("report " rendered in a "proceeding" shall contain "findings of fact" or "opinion" (emphasis added)) with 26 U.S.C. § 7459(a) (1976) ("decision shall be made by a judge in accordance with report of the Tax Court" (emphasis added)). The five late filers in No. 82-7140 each received a "decision" distinct from that of the timely filer in Keogh.
 
 
 12
 The legislative history of section 7483 supports our position. When section 7483 was enacted as part of the Internal Revenue Code of 1954, it provided, in pertinent part, that "The decision of the Tax Court may be reviewed ... if a petition ... is filed by either the Secretary ... or the taxpayer within 3 months after the decision is rendered. If, however, a petition ... is so filed by one party to the proceeding, a petition ... may be filed by any other party to the proceeding within 4 months after such decision is rendered" (emphasis added). Act of Aug. 16, 1954, ch. 736, 68A Stat. 891. In 1969, however, section 7483 was amended to its present form, with the "to the proceeding" language deleted. The "[c]hanges ... as to time for appeal and terminology" were made explicitly in order to conform the code provisions to the Federal Rules of Appellate Procedure. See S.Rep. No. 552, 91st Cong., 1st Sess. 305, reprinted in 1969 U.S.Code Cong. & Ad.News 2027, 2344. Rule 4(a)(3) of those rules, like section 7483, permits a late appeal by "any other party," as long as a timely appeal has already been filed. But, unlike the former version of section 7483, the scope of the term "any other party" in Rule 4(a)(3) is determined by reference to the "judgment or order appealed from." See Fed.R.App.P. 4(a)(1). Both Rule 4(a)(3), for district court "judgments" and "orders," and the present version of section 7483, for tax court "decisions," now give a "bright-line" definition for those who may benefit from the extended filing period. They must be parties to the judgment, order, or decision that is appealed.
 
 
 13
 The language of Tax Court Rule 141(a), pursuant to which consolidation for briefing, trial, and opinion was effected in this case, also supports our view. After describing the procedure for consolidation, the rule states that "[a]s to joinder of parties, see Rule 61(a)." 26 U.S.C.App. Rule 141(a) (1976). This reference suggests that while consolidation may bring several tax cases and taxpayers into one proceeding, only formal joinder can link those taxpayers as "parties."
 
 
 14
 Estate of Lang v. Commissioner, 613 F.2d 770, 771-72 n. 1 (9th Cir.1980), in which we permitted a late filing of a notice of appeal by a taxpayer from a gift tax decision where the government had previously filed a timely notice of appeal from a separate estate tax decision in a consolidated proceeding, does not compel a contrary result. In Lang, the tax court had stated in its memorandum opinion that a "[d]ecision will be entered under Rule 155," and, thus, the separate decisions that were eventually entered could not reasonably have been anticipated. See id. Here, by contrast the tax court specifically provided in its memorandum of findings of fact and opinion that "Decisions will be entered under Rule 155" (emphasis added), and thus, the five tardy filers cannot claim that they thought they were all parties in the same case and to the same decision. Moreover, in Lang, both cases involved the same taxpayer, whereas here each case involves different taxpayers. Hence, confusion over whether the two cases were in fact separate cases was far more likely in Lang than here.
 
 
 15
 For these reasons, we conclude that the appeals from the five tax court decisions in No. 82-1740 are not within our jurisdiction under 26 U.S.C. § 7482 and therefore must be and hereby are DISMISSED.
 
 DUNIWAY, Circuit Judge (dissenting):
 
 16
 I dissent.
 
 
 17
 Our decision in Estate of Lang v. Commissioner, 9 Cir., 1980, 613 F.2d 770, is in point, and we are required to follow it. Moreover, even if that case were not in point, we should hold that the appellants' appeal is timely. The majority exalts form over substance, and sets a trap for the unwary.
 
 
 18
 The five male appellants in this case were, during the years in question, "21 dealers" at the Dunes Casino in Las Vegas, Nevada. They, together with one Keogh, another 21 dealer at the casino, were found by the Commissioner to have failed to report most of the tips or "tokes" that they received from patrons of the casino. Each petitioned the tax court for a redetermination of the deficiency asserted by the Commissioner. Their cases were consolidated on the Commissioner's motion, which they joined. There was but one trial, and one opinion. The major part of the evidence was received against all of them. It is described in our opinion in Keogh v. C.I.R., 9 Cir., 713 F.2d 496 (1983). That evidence was the determining evidence against each taxpayer. The "Memorandum, Findings of Fact and Opinion" of the tax court is also described in Keogh.
 
 
 19
 The majority emphasizes the facts that each taxpayer filed a separate petition in the tax court, that the consolidation was "for purposes of trial, briefing and opinion," that each taxpayer had a separate docket number, that the opinion stated "[d]ecisions will be entered," and that, all on the same day, six pieces of paper were filed, each bearing a caption containing the name of a taxpayer and of his spouse, if any, and the number assigned to that taxpayer's petition, each labelled "Decision," and each showing the deficiency computed against that taxpayer. I wonder what the majority would have held if but one paper had been filed, captioned, like the opinion, with the names and docket numbers of all of the taxpayers and spouses, entitled "Decision," and computing and fixing a deficiency for each taxpayer. Also, would it have made any difference if the opinion had said, "Decision will be entered," instead of "Decisions will be entered"?
 
 
 20
 The majority opinion states: "At no point, however, were the taxpayers and the Keoghs joined in one action." This, to me, is simply not so. I am reminded of the story of the blind men who "saw" the elephant. The part that each touched and felt decided what he said the elephant was. The majority encounters the trunk--the original petitions, and the tail--the final "decisions," and gives no weight to the body of the beast. Yet that is the heart of the case, the trial--the testimony, the exhibits, the stipulations, the briefs, the arguments, the findings of fact, the conclusions of law. The judgment or "decision" follows from the latter, and its entry is usually a clerical and ministerial matter. From the time of consolidation to the end, this was, for all practical purposes, one case, and all of the taxpayers were parties to it. I think that most litigants, and indeed most lawyers, would think that each taxpayer in the matter was a "party" to a single consolidated proceeding in the tax court.
 
 Section 7483 of 26 U.S.C. provides:
 
 21
 Review of a decision of the Tax Court shall be obtained by filing a notice of appeal with the clerk of the Tax Court within 90 days after the decision of the Tax Court is entered. If a timely notice of appeal is filed by one party, any other party may take an appeal by filing a notice of appeal within 120 days after the decision of the Tax Court is entered.
 
 
 22
 Here, the crucial sentence of the section is the second. It refers to "one party," and "any other party." I would hold that, when the consolidation occurred, all of the taxpayers became parties to the consolidated case, and remained parties thereafter, whether or not the opinion said "decision" or "decisions," and whether or not there was one paper labelled "decision" or there were six, each labelled "decision." The majority's opinion turns the sentence into a trap for the unwary.
 
 
 23
 My conclusion is supported by our decision in Estate of Lang v. C.I.R., 9 Cir., 1980, 613 F.2d 770 fn. 1, pp. 771-772. There, one taxpayer had filed two petitions in the tax court, one attacking a gift tax deficiency and one attacking an estate tax deficiency. The two were consolidated and tried together, and there was one opinion, and it said "Decision will be entered." However, the tax court filed two decisions, one in each case. Here is what we said:
 
 
 24
 Neither § 7483 nor prior Ninth Circuit cases interpreting that statute directly address the problem of a consolidated case for which two "decisions" have been published. Among the factors we have taken into consideration in our application of § 7483 to this novel situation are these: (1) The Tax Court's opinion did not anticipate two decisions. Rather, it concluded with the order that "Decision will be entered under Rule 155" (emphasis added). (2) The issuance of two "decisions" was specifically requested by the Commissioner. (3) The Commissioner waited until the 88th day to file his estate tax appeal, perhaps deliberately in order to preclude the taxpayer from responding with an appeal of the gift tax issues. (4) The two "decisions" were issued as a paired set on the same day. (5) Except for the separate "decisions," this case has been treated as a single proceeding in all other respects.
 
 
 25
 Because the two decisions derive from the same opinion, we do not find that one of them became final and appealable after 90 days when an appeal had been taken from the other before that time. Further appeals of either decision would have been precluded only after 120 days.
 
 
 26
 In the case at bar, elements (4) and (5) are also present. I decline to believe that we should rest our judgment on whether the opinion said "decision" or "decisions," or whether the Commissioner asks for two decisions. To do so would be hyper-technical. As to element (3), the language of the crucial second sentence in § 7483 does not make the 120 days inapplicable if the first party appeals, as the Keoghs did, early in the 90 days specified in the first sentence, rather than late, as the Commissioner did in Estate of Lang.
 
 
 27
 The distinctions drawn by the majority are not valid. One ground is the word "decisions" in the opinion here, and "decision" in Estate of Lang. The other is that in that case the same taxpayer was a party to each case. The first is, as I have said, hypertechnical. The other is immaterial. We should follow Estate of Lang. The majority decision transforms Estate of Lang into Mr. Justice Roberts' "restricted railroad ticket, good for this day and train only." Smith v. Allwright, 1944, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987 (Roberts, J., dissenting). A panel should not treat our own precedents that way. Overruling is the prerogative of the court in banc.
 
 
 28
 Legislative history also supports my position. When § 7483 was enacted as part of the Internal Revenue Code of 1954, it provided, in pertinent part, that "The decision of the Tax Court may be reviewed ... if a petition ... is filed by either the Secretary ... or the taxpayer within 3 months after the decision is rendered. If, however, a petition ... is so filed by one party to the proceeding, a petition ... may be filed by any other party to the proceeding within 4 months after such decision is rendered."
 
 
 29
 The provision was different, however, in the House Bill. House Report No. 1337, March 9, 1954, reprinted at 3 U.S.Code Cong. & Admin.News, 1954, pp. 4017 ff., states, at p. 4582:
 
 
 30
 § 7483. Petition for review
 
 
 31
 This section changes existing law by providing, in case one party to the proceeding files a petition for review that the adverse party is given 1 additional month to file his petition for review.
 
 
 32
 (Emphasis added). The Senate Report, reprinted at id., pp. 4621 ff., states at p. 5265:
 
 
 33
 § 7483. Petition for review
 
 
 34
 ... Your committee has amended the section to provide that if one party to the proceeding files a petition for review, the additional month to file a petition for review will be available to any other party to the proceeding, whether or not an adverse party.
 
 
 35
 As to this, the Conference Report, House Report No. 2543, July 26, 1954, reprinted at id. 5280 ff., states, at p. 5345: "The House recedes."
 
 
 36
 In 1969, § 7483 was amended to its present form by the Tax Reform Act of 1969. The amendment was inserted by the Senate as part of a chapter changing the tax court to an Article I Court. See Senate Report No. 91-552, reprinted at 2 U.S.Code Cong. & Admin.News, 1969, pp. 2027 ff., at page 2340. The Report states (p. 2344):
 
 
 37
 Changes are made as to time for appeal and terminology in order to conform the code provisions to the Federal Rules of Appellate Procedure. The code provision for appealing from Tax Court decisions within 3 months after entry of decision, is changed to 90 days. In order to resolve a number of cases in which appellate jurisdiction is being challenged because the petition for review was filed within 3 months but after 90 days, the amendments provide that a petition is timely filed if it is filed within either time period. This applies in cases where the Tax Court decision is entered before the thirtieth day after the bill's enactment. Thereafter, the 90-day rule is to apply.
 
 
 38
 I find nothing in the Report indicating an intent to make any change except one from 3 or 4 months to 90 or 120 days.
 
 
 39
 Rule 4(a)(3), F.R.App.P., states: "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days ...." It does not say "party to the case" or "party to the action." Adding "to the case" or "to the action" would be unnecessary surplusage. The change from "party to the proceeding" to "party" is, as the Report states, "conforming." See also the Conference Report, No. 91-782, reprinted at id., pp. 2392 ff., at 2457: "(12) Changes are made as to time for appeal and terminology in order to conform the code provisions to the Federal Rules of Appellate Procedure;". No doubt it was felt that "to the proceeding" was unnecessary surplusage. There is no indication that the omission was intended to have the rather astonishing effect that the majority gives to it. We should not narrow the language of § 7483 by a meeching construction of it.
 
 
 40
 We should proceed to consider the merits. On the merits, I would affirm the tax court for the reasons stated in Keogh, supra.
 
 
 41
 I dissent.